FILED
2012 Mar-29  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

COREY CHAPMAN,           )
                              )
        Plaintiff,        )
                              )
    v.             )     CIVIL ACTION NO. 11-G-2125-E
                              )
MICHAEL J. ASTRUE,     )
Commissioner of Social Security,  )
                              )
        Defendant.    )
                              )
                              )

## MEMORANDUM OPINION

The plaintiff, Corey Chapman, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether he has a severe impairment;

(3)     whether his impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform his past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

2

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Charles L. Brower determined the plaintiff met the first two tests, but concluded that while he has an impairment or combination of impairments considered "severe," he did not suffer from a listed impairment.  In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform the following jobs: sales attendant at the light level of exertion; automobile detailer at the medium level of exertion; and assembler, at the sedentary level of exertion. [R. 16]. Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the

3

> alleged pain arising from that condition or (3) that the objectively
> determined medical condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this

circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical
> evidence of a condition that could reasonably be expected to cause the pain
> alleged, neither requires objective proof of the pain itself.  Thus under both the
> regulations and the first (objectively identifiable condition) and third (reasonably
> expected to cause pain alleged) parts of the Hand standard a claimant who can
> show that his condition could reasonably be expected to give rise to the pain he
> alleges has established a claim of disability and is not required to produce
> additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and
> 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added).  Furthermore, it must be kept in mind that "[a]

claimant's subjective testimony supported by medical evidence that satisfies the pain

standard is itself sufficient to support a finding of disability."  Foote at 1561.  Therefore,

if a claimant testifies to disabling pain and satisfies the three part pain standard, she must

be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must

articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for
> refusing to credit a claimant's subjective pain testimony, then the Secretary, as a
> matter of law, has accepted that testimony as true.  Implicit in this rule is the
> requirement that such articulation of reasons by the Secretary be supported by
> substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the

Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if her pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

**DISCUSSION**

The ALJ found that the plaintiff has the following severe impairments: "[f]unctional limitations, status post left knee fracture and left tibial fracture." [R. 14].

6

Indeed, the record reflects that in June 2006, the plaintiff severely injured his left knee.

An MRI taken June 19, 2006, showed:

> There is a large joint effusion with a fat/fluid level consistent with intra-articular fracture.  There is a comminuted mildly displaced fracture of the lateral tibial plateau.  The fragment is displaced minimally inferiorly and laterally.  There is considerable marrow edema in the region of the fracture.  Fracture lines extend across the midline to the medial aspect of the tibia.  The anterior and posterior cruciate ligaments, medial and lateral collateral ligament complexes and patellar tendon appear intact.  The medial and lateral meniscus are intact without evidence of tear.  There is no evidence of Baker's cyst.

[R. 201].  On June 22, 2006, Karl E. Hofammann, III, M.D., performed an open reduction and internal fixation of the bicondylar tibial plateau fracture with lateral Synthes compression plate.  At a July 5, 2006, follow-up visit, Dr. Hofammann told the plaintiff to continue in the knee immobilizer and crutches, and to not bear any weight on the left leg for about three months. [R. 197].  By September 14, 2006, Dr. Hofammann initiated a weight-bearing protocol as limited by the plaintiff's pain. [R. 195].

On December 12, 2006, the plaintiff presented to the emergency room complaining of left knee pain he rated at a seven on a one to 10 scale. [R. 247].  Treatment notes indicate that he was standing behind a car which threw a rock hitting his left knee.  Id.  On June 22, 2007, the plaintiff presented again to the emergency room complaining of left knee pain he rated at six. [R. 242].  The pain was noted to be chronic and moderate in nature, and exacerbated by walking. [R. 243].  On July 9, 2007, the plaintiff was seen at Quality of Life Health Services for constant left knee, ankle and foot pain. [R. 260].  On July 24, 2007, the plaintiff's doctor, John W. Sherrer, M.D.,

7

completed a food stamp program work requirements form in which he stated he believed

the plaintiff to be physically unable to work because of bilateral fixation of his patellas,

and that he believed the plaintiff's condition to be permanent. [R. 336].  Similarly, the

plaintiff's nurse practitioner completed an application for disability access parking

privileges form in which he thought the plaintiff was severely limited in his ability to

walk because of his condition. [R. 335].

       On August 29, 2007, the plaintiff again went to the emergency room

complaining of left knee pain and left ankle swelling which was relieved by "nothing."

[R. 228].  He was diagnosed with arthritis, and was prescribed Naprosyn and Ultram for

pain. [R. 231, 233].   The plaintiff returned to Quality of Life on September 10, 2007, still

complaining pain at level six. [R. 258].  Treatment records indicate that the plaintiff

needed arthroscopic knee surgery and manipulation, but he had no health insurance and

could not afford the surgery. [R. 259].  Again, on November 29, 2007, the plaintiff went

to the emergency room complaining of left foot and ankle pain and swelling he rated at a

seven. [R. 236].  On December 10, 2007, he returned to Quality of Life with seven out of

10 left knee pain. [R. 256].  A physical examination revealed that his range of motion was

limited and his left knee was tender to the touch.  Id.  He was still taking Naprosyn and

Ultram.  Id.

       On January 14, 2008, the plaintiff was seen at Bruno Rehab, complaining of

left knee pain, weakness and decreased range of motion. [R. 266].  He began

rehabilitation therapy which he continued through April 2008, but continued to have left

knee pain. [R. 264-333].  On February 5, 2008, he told his physical therapist that his pain is about an eight out of 10 in the morning. [R. 291].  The plaintiff stated that some nights he wakes up because of the pain. [R. 302].  On February 26, 2008, the therapist noted that because of severe complaints of pain and difficulty, that day's therapy session was abbreviated. [R. 312].  On April 21, 2008, the plaintiff was discharged from physical therapy with 20 percent of the goals met to return to an orthopedic surgeon. [R. 332].

On June 25, 2008, the plaintiff was seen by Andrew Huang, M.D., who noted that the plaintiff had seen an orthopedic surgeon who told him he needed to have a second surgery, but that it would be extensive and there were no guarantees. [R. 340]. Dr. Huang advised the plaintiff to return to the orthopedic surgeon "because he is young and if surgery will give him a chance of getting better, he should probably take it."  Id. Dr. Huang prescribed Lortab 7.5 and increased the plaintiff's Mobic to 15 mg.  Id.  On October 15, 2008, the plaintiff returned to Dr. Huang, who diagnosed possible peripheral neuropathy. [R. 346].  Dr. Huang noted that an orthopedic surgeon told the plaintiff "it would be a lot of surgery and will be very risky including having to repair nerves and tendons and advised the patient to think hard before proceeding with the surgery."  Id. On physical examination, the plaintiff had diminished pinprick sensation in the middle aspect of his left foot.  Id.  Dr. Huang prescribed Neurontin.  Id.

On July 31, 2009, Dr. Huang gave refills of Lortab and Mobic. [R. 361]. On September 11, 2009, Dr. Huang diagnosed osteoarthritis of the left knee, status post orthopedic surgery, and he refilled the plaintiff's prescription of Lortab for severe pain.

9

[R. 360].  On October 23, 2009, Dr. Huang noted the plaintiff's chronic knee pain and continued him on his current medications. [R. 359].  On February 26, 2010, the plaintiff saw Dr. Huang again for chronic left knee pain. [R. 364].  Dr. Huang refilled his Lortab prescription, and increased Mobic to 15 mg to "see if the combination would help [the plaintiff] get better relief with chronic knee pain."  Id.  Dr. Huang noted on September 24, 2010, that the plaintiff had "decided not to proceed with the surgery because of the concern of doing further damage." [R. 363].  Dr. Huang diagnosed hypertension and traumatic arthritis, and refilled the plaintiff's Lortab prescription.  Id.

In his opinion, the ALJ wrote:

> Claimant testified that he is unable to work because if he sits for a long time, his left lower extremity becomes numb.  He keeps his left leg elevated the majority of the time.  When he sits, he has to get up and move around.  He still cannot bend his left knee.  He has constant pain in his left leg.

[R. 15].  The ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible as they are not substantiated by objective medical evidence."  Id.  The ALJ's conclusory statement that the plaintiff pain testimony is not credible is not supported by substantial evidence.

The medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's

attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). For more than three years after the plaintiff's traumatic knee injury and surgery, the plaintiff consistently sought treatment for chronic knee pain, and his doctors continued to prescribe narcotic pain medication.  As Judge Allgood observed in Lamb v. Bowen:  "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain.  No examining physician ever questioned the existence of appellant's pain.  They simply found themselves unable to cure the pain."  847 F.2d 698 (11th Cir. 1988).

Because the ALJ's reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.  After the hearing, Norma Jill Jacobson, a vocational expert, answered the ALJ's interrogatories, stating that a person suffering from moderately severe pain on a daily basis could not do any of the plaintiff's previous jobs, nor any of the jobs she identified based on the ALJ's residual functional capacity assessment. [R. 181].

## CONCLUSION

Because the plaintiff meets the three part pain standard, the Commissioner must articulate reasons for refusing to credit the plaintiff's pain testimony.  In this case, as noted above, the ALJ's reasons for discrediting the plaintiff's pain testimony are not

supported by substantial evidence.  Therefore, that testimony must be accepted as true by this court.  Hale, 831 F.2d at 1012.  Based on the answers to the hypothetical questions posed to the VE, the plaintiff is unable to work.  Therefore, the Commissioner failed to carry his burden at step five of the sequential analysis and the plaintiff is disabled within the meaning of the Social Security Act.

DONE and ORDERED 29 March 2012.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.